1   **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                       **FOR THE DISTRICT OF ARIZONA**

8

9   Suzanne Richardson,                    )        No. CV-14-1370-PHX-SMM
                                           )
10              Plaintiff,                  )
                                           )
11  v.                                      )        **ORDER**
                                           )
12  Mountain Range Restaurants LLC,         )
                                           )
13              Defendant.                  )
                                           )
14  _____)

15          In this District, multiple civil actions have been filed under the Fair Labor Standards

16  Act ("FLSA") raising similar legal issues.  In the interest of judicial economy, all of these

17  related FLSA cases were transferred to this Court for the purpose of managing,

18  administrating, and resolving them.  Previously, the Court held an omnibus hearing with the

19  parties regarding the status of the twenty-eight transferred cases.  (Docs. 6, 7.)  In these

20  transferred civil actions, all of the Plaintiffs have the same counsel of record prosecuting their

21  complaints.

22          In this current case, Defendant Mountain Range Restaurants LLC ("Denny's") moves

23  to dismiss Plaintiff Suzanne Richardson's ("Richardson") Complaint, which is now pending

24  before the Court.  (Doc. 8.)  Richardson has responded and Denny's has replied in support.

25  (Docs. 10, 11.)  The Court will grant, in part, and deny, in part, Denny's motion to dismiss.

26                              **BACKGROUND**

27          Richardson was a former employee of a Denny's restaurant working in the occupation

28  of a server in 2012 and 2013.  Subsequently, Richardson filed her Complaint under the FLSA

raising 3 Counts, Counts 1 and 2 raising failure to pay federal minimum wage claims and Count 3 raising an unpaid wage claim. (Doc. 1.)  Under the FLSA, 29 U.S.C. § 203(t), "'Tipped employee' means any employee engaged in an occupation in which she customarily and regularly receives more than $30 a month in tips."  It is undisputed that Richardson in her occupation as a server for Denny's was a tipped employee.  In Count 1, Richardson alleges that Denny's required her to perform non-tipped duties related to her tipped server occupation in excess of 20% of the time she spent per shift yet only getting paid at the reduced tip credit rate for those duties.  (Doc. 1 at 4-5.)  Richardson does not allege, however, that Denny's paid her less than the applicable minimum wage ($7.25 an hour) for the work she performed during her regular forty-hour workweeks.  (Doc. 1.)

In Count 1, Richardson states that she was required to do the following non-tipped duties related to her server occupation:

> preparatory and workplace maintenance tasks such as working as a hostess, working as a cashier, stocking ice, sweeping floors, stocking food/condiments, refilling condiment caddies, running food to tables for other servers, brewing tea, brewing coffee, checking food temperature, wiping down/washing trays, cleaning soft drink dispenser nozzles, cleaning soda machines, cutting/stocking fruit, washing plates/glasses/silverware, polishing glassware, cleaning menus, cleaning tables, cleaning and de-icing the dessert area, maintaining and stocking the salad bar, restocking the beverage line, and rolling one to two buckets of silverware each shift.

(Id. at 5.)  Richardson alleges that because her related non-tipped work exceeded 20% of her server duties, she was entitled to the federal minimum wage for the non-tipped duties, not the tip credit hourly wage rate used by Denny's.

In Count 2, Richardson alleges that she was engaged in working dual jobs at Denny's yet only getting paid at the reduced tip credit rate for performing a non-tipped occupation. (Doc. 1 at 6-7.)  Richardson alleges that she performed non-related duties constituting a different job classification, which include, but are not limited to:

> taking out trash, scrubbing walls, cleaning the back of the house, vacuuming, labeling all stocked items with applicable expiration dates, deep cleaning all booths, performing labor while the restaurant was closed for renovation, and dusting.

(Id. at 7.)  Richardson contends that she was entitled to the federal minimum wage when

1   performing these non-related, non-tipped duties not the tip credit hourly wage rate used by

2   Denny's.  (Id. at 7-8.)

3                                    **STANDARD OF REVIEW**

4            Motion to Dismiss

5            While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

6   detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his

7   "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation

8   of the elements of a cause of action will not do.  Factual allegations must be enough to raise

9   a right to relief above the speculative level, on the assumption that all the allegations in the

10  complaint are true (even if doubtful in fact).  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

11  (2007) (further citation and footnote omitted).  A complaint must contain sufficient factual

12  matter to "state a claim that is plausible on its face."  Id. at 570. "A claim has facial

13  plausibility when the pleaded factual content allows the court to draw the reasonable

14  inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S.

15  662, 678 (2009) (citing Twombly, 550 U.S. at 556).

16           When deciding a motion to dismiss, all allegations of material fact in the complaint

17  are taken as true and construed in the light most favorable to the plaintiff.  W. Mining

18  Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).  A court may dismiss a claim either

19  because it lacks "a cognizable legal theory" or because it fails to allege sufficient facts to

20  support a cognizable legal claim.  See SmileCare Dental Group v. Delta Dental Plan of Cal.,

21  Inc., 88 F.3d 780, 783 (9th Cir. 1996).  "Dismissal without leave to amend is improper unless

22  it is clear, upon *de novo* review, that the complaint could not be saved by any amendment."

23  Polich v. Burlington N., Inc., 942 F.2d 1467, 1472 (9th Cir. 1991). When exercising its

24  discretion to deny leave to amend, a court must be guided by the underlying purpose of Fed.

25  R. Civ. P. 15 to facilitate decisions on the merits, rather than on the pleadings or

26  technicalities.  See United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981).

27           FLSA

28           Under the FLSA, employers must pay employees the federal minimum wage "who

in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce," according to the statutory schedule of the minimum hourly wage.  29 U.S.C. § 206(a) (2012).  In 2007, Congress scheduled the federal minimum wage to increase to $7.25 an hour by July 2009.  See Fair Minimum Wage Act of 2007, Pub.L. No. 110–28, § 8102(a), 121 Stat. 112, 188 (raising the minimum wage to $5.85 per hour, effective July 24, 2007, to $6.55 per hour, effective July 24, 2008, and to $7.25 per hour, effective July 24, 2009).

Historically, before 1966, the FLSA did not generally apply to employees in restaurants and hotels.  As part of a legislative compromise struck in extending the coverage of the FLSA to these industries for the first time, Congress enacted a "tip credit" provision, to accommodate in part the long-standing practice in these industries whereby workers received most or even all of their income from customer tips.  See Pub. L. No. 89-601, §§ 101(a), 201(a), 80 Stat. 830, 833 (1966).  Legislative history clearly demonstrates that Congress's intent was not to disrupt the restaurant industry's "existing practices with regard to tips."  See S. Rep. No. 89-1487, reprinted in 1966 U.S.C.C.A.N. 3002, 3014.

From introduction of the tip credit provisions in 1966 through 1996, Congress set the amounts for the minimum employer cash wage and tip credit as a percentage of the minimum wage, ranging from 40% to 60%.  The 1996 FLSA amendments changed the tip credit provisions to set the employer's statutory minimum cash wage obligation to a dollar amount ($2.13 per hour), rather than a percentage of the minimum wage.  See Pub. L. No. 104-188, § 2105, 110 Stat. 1755, 1928-29.[1]  The maximum tip credit thereafter became the difference between $2.13 and the federal minimum wage.  Id.  Thus, the tip credit provision of the FLSA, § 203(m), allows employers to pay tipped employees $2.13 per hour if the employees'

---

[1]Prior to the 1996 amendment, employers were required to pay tipped employees a cash wage "by an amount determined by the employer, but not an amount in excess of . . . 50 percent of the applicable minimum wage rate after March 31, 1991." 29 U.S.C. § 203(m) (1994). The minimum wage rate after March 31, 1991 and prior to the 1996 amendments was $4.25 an hour. Thus, prior to the 1996 amendments, employers were required to pay a cash wage of at least $2.13. ($4.25 an hour x 0.50 = $2.125 = $2.13 rounded up).

tips suffice to fulfill his or her minimum wage for the workweek.  29 U.S.C. § 203(m).
Specifically, § 203(m) states:

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—
>
> (1) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such employee on August 20, 1996 [i.e., $2.13 per hour]; and
>
> (2) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in paragraph (1) and the wage in effect under section 206(a)(1) of this title.

29 U.S.C. § 203(m).  Thus, an employer may use a tip credit to determine the wage of a tipped employee if it: (1) pays a cash wage of at least $2.13 per hour; (2) informs its employees of the FLSA's tip credit provisions; (3) permits its employees to retain all their tips (except for permissible tip pooling); and (4) ensures that the cash wage plus the tip credit equal the minimum wage for the forty-hour workweek.  See Roberts v. Apple Sauce, Inc., 945 F. Supp.2d 995, 1000 (N.D. Ind. 2013).

Pursuant to 29 C.F.R. § 531.56(d), "[m]ore than $30 a month in tips customarily and regularly received by the employee is a minimum standard that must be met before any wage credit for tips is determined under [29 U.S.C. § 203(m)]."  Further, 29 C.F.R. § 516.28, requires that an employer keep separate records for tipped and non-tipped occupations. Generally, employers are required to report on an employee W-2, (1) the sum of the hourly wage paid, (2) the cash tips reported by the employee on Form 4070, and (3) the amount shown by the records to have been paid to the employee as charge tips.  See Nat'l Restaurant Assoc. v. Simon, 411 F. Supp. 993, 994 (D. D.C. 1976).  In no event, however, is an employee to receive less than the minimum wage per workweek.

# DISCUSSION

## Counts 1 and 2

In Count 1 of Richardson's Complaint, she alleges that Denny's violated the FLSA by failing to pay her the federal minimum wage in violation of 29 U.S.C. § 206(a). (Doc. 1.) Richardson alleges that Denny's did not pay her federal minimum wage for her work as a

server because as a tipped employee and paid at rate of $2.13, she was required to work and spend a substantial amount of time, in excess of 20% of the hours she worked, performing related non-tipped duties. (Id. at 5.) Richardson alleges that Denny's violated the FLSA by not paying her federal minimum wage for her time spent performing those related non-tipped duties. (Id.) Richardson concedes that she is unable to state the exact amount owed to her by Denny's, either on a workweek basis or a total basis, but will obtain and determine such an amount during discovery. (Doc. 1 at 4.)

In Count 2, Richardson alleges that she was engaged in working dual jobs at Denny's yet only getting paid at the reduced tip credit rate for performing a non-tipped occupation. (Doc. 1 at 6-7.) Richardson alleges that her non-related server duties constitute a different job classification and that she was entitled to the federal minimum wage when she performed those duties, not the tip credit hourly wage used by Denny's. (Id. at 7-8.)

Based on 29 U.S.C. § 206(a) and C.F.R. §§ 531.51, 531.56(e), Denny's contends that Counts 1 and 2 are subject to dismissal. (Doc. 8.) Denny's maintains that the DOL regulation specifically provides that servers perform incidental duties in addition to their normal duties as a server. (Id. (citing C.F.R. § 531.56(e).) Denny's further contends, however, that Richardson has not provided any degree of specificity as to any date she worked at these related and non-related non-tipped duties, how long each took, or how often they were done. (Id.) According to Denny's, in Count 1, Richardson merely claims that she spent more than 20% of her workweek time performing related non-tipped duties and that in Count 2, she alleges that she is entitled to federal minimum wage for performing non-related non-tipped duties. (Id.) Denny's contends that there is no FLSA violation because it is undisputed that Richardson is a tipped employee and that Denny's always paid her the federal minimum wage for all of her workweeks as a Denny's employee. (Doc. 11 at 2.)

Richardson responds that a Department of Labor ("DOL") sub-regulation limits the amount of related duties that a tipped employee can perform and that if a tipped employee spends a substantial amount of time, or more than 20% of their workweek engaged in related but non-tipping work, they must be paid the full minimum wage for the time spent

performing the non-tipped work.[2]  (Doc. 10.)  Richardson asks the Court to defer to DOL's subregulation and deny dismissal of Count 1.  Regarding Count 2, Richardson alleges that she was working dual jobs when performing duties unrelated to her server occupation and entitled to federal minimum wage for performing the unrelated duties.  (Id.)

*No Minimum Wage Violation*

The Court agrees with Denny's and finds that Count 1 fails to state a minimum wage claim under the FLSA.  The provisions of the FLSA govern the basis for asserting a claimed violation of federal minimum wage.  The Supreme Court has emphasized the importance of companies paying an employee's minimum wage on a weekly basis.  See Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707 (1945) (stating that "employees receiving less than the statutory minimum are not likely to have sufficient resources to maintain their efficiency and well-being"); see also Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 739 (1981).  Under 29 U.S.C. § 206, the FLSA requires that for every workweek "every employer shall pay to each of [its] employees," the federal minimum wage, except for tipped employees, who receive $2.13 an hour, with the rest of their federal minimum wage coming from customer tips.  See 29 U.S.C. § 206(a)(1), § 203(m), and § 203(t).  Thus, under § 203(m)'s tip credit, employers may pay tipped employees at an hourly wage below the minimum wage, provided that for the workweek the hourly wage and the employees' tips, taken together are at least equivalent to the federal minimum wage, which in 2012 and 2013 was $7.25 an hour.

The Supreme Court has also made it clear that an employment practice does not violate the FLSA unless the FLSA prohibits it.  See Christensen v. Harris Cnty., 529 U.S. 576, 588 (2000).  The FLSA creates a private right of action against any employer who violates § 206 (the minimum wage requirement) or § 207 (the overtime compensation requirement).  See 29 U.S.C. § 216(b).  Section 216(b) permits employees to recover from the employer "the amount of their unpaid minimum wages, or their unpaid overtime

---

[2] See U.S. Dept. of Labor, Wage and Hour Division, Field Operations Handbook, § 30d00(e) (1988).

1   compensation." Id.

2   The Court finds that whether Richardson is able to state a FLSA minimum wage

3   violation depends on the total pay for the workweek divided by the total number of hours

4   worked in that workweek. This "workweek" concept is well-supported in the caselaw,

5   starting with the seminal case of United States v. Klinghoffer Bros. Realty Corp., 285 F.2d

6   487 (2d Cir. 1961). In Klinghoffer, employees who had not been paid for certain hours

7   worked claimed a violation of the FLSA's minimum wage provision. The Klinghoffer court

8   found that:

9       [i]f the total wage paid to each [employee] in this case during any given week
        is divided by the total time he worked that week, the resulting average hourly
10      wage exceeds [the minimum wage required by the FLSA]. We believe this is
        all that is necessary to meet the requirements of 206(a).

11

12  Id. at 490. The Ninth Circuit has followed the "workweek" concept established in

13  Klinghoffer for FLSA minimum wage violations. See Adair v. City of Kirkland, 185 F.3d

14  1055, 1063 (9th Cir. 1999) (stating that "The district court properly rejected any minimum

15  wage claim the officers might have brought by finding that their salary, when averaged

16  across their total time worked, still paid them above the minimum wage."); accord Hensley

17  v. MacMillan Bloedel Containers, Inc., 786 F.2d 353, 357 (8th Cir. 1986); Dove v. Coupe,

18  759 F.2d 167, 172 (D.C. Cir. 1985); Blankenship v. Thurston Motor Lines, 415 F.2d 1193,

19  1198 (4th Cir. 1969). While § 206 of the FLSA speaks of an hourly wage, an employer's

20  failure to compensate an employee for particular hours worked does not necessarily violate

21  the minimum wage provision. See Dove, 759 F.2d at 171. That is because the workweek as

22  a whole, not each individual hour within the workweek, determines whether an employer has

23  complied with § 206(a). Id.; see 29 C.F.R. § 776.4(a) ("The workweek is to be taken as the

24  standard in determining the applicability of the Act."). Thus, no minimum wage violation

25  occurs so long as the employer's total wage paid to an employee in any given workweek

26  divided by the total hours worked in the workweek equals or exceeds the minimum wage

27  rate. See Adair, 185 F.3d at 1062 n.6.

28  Even though Richardson may allege in conclusory fashion that she was paid less than

- 8 -

minimum wage, her complaint pertains to examples of tasks that Denny's asked her to perform that allegedly were both related to and unrelated to her occupation as a server. (Doc. 1 at 5, 7.) Such allegations do not state a minimum wage claim since the pleading never alleges that during any particular week, the average of her hourly wages was less than the federal minimum wage. See Adair, 185 F.3d at 1062. Federal minimum wage claims fail where the aggregate wages for a workweek, "when averaged across the[] total time worked," is equal to or in excess of the minimum wage. Id. at 1063. Thus, regardless of the frequency with which non-tipped work was assigned, no minimum wage claim is stated against Denny's unless Richardson's average wage for the workweek, including tips, fell below the minimum wage. In this case, Richardson does not allege that Denny's did not pay her the minimum wage for a particular workweek; therefore, Counts 1 and 2 are subject to dismissal.

In order to avoid dismissal of Count 1, however, Richardson asks the Court to defer to the DOL sub-regulation, § 30d00(e),[3] that allegedly limits the amount of related duties a tipped employee can perform, and that if a tipped employee spends a substantial amount of time, or more than 20% of their workweek engaged in non-tipping duties, they must be paid the full minimum wage for their time spent performing the non-tipped work. (Doc. 10.) In support, Richardson relies on Fast v. Applebee's Int'l, Inc., 638 F.3d 872 (8th Cir. 2011) and Crate v. Q's Rest. Grp., No. CV 8:13-2549, 2014 U.S. Dist. Lexis 61360 (M.D. Fl. May 2,

---

[3]The DOL sub-regulation, § 30d00(e), provides, as follows:

[C.F.R. §] 531.56(e) permits the taking of the tip credit for time spent in duties related to the tipped occupation, even though such duties are not by themselves directed toward producing tips (i.e., maintenance and preparatory or closing activities). For example a waiter/waitress, who spends some time cleaning and setting tables making coffee, and occasionally washing dishes or glasses may continue to be engaged in a tipped occupation even though these duties are not tip producing, provided such duties are incidental to the regular duties of the sever (waiter/waitress) and are generally assigned to the servers. However, where the facts indicate that specific employees are routinely assigned to maintenance, or that tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in such duties.

1    2014).

2         Neither Congress, the Supreme Court, nor the Ninth Circuit Court of Appeals has

3    recognized such a purported cause of action based on the sub-regulation.  Denny's contends

4    that there was no violation of FLSA here because the sub-regulation is contrary to the

5    statute's and the regulations' clear pronouncement that employers are entitled to utilize the

6    tip credit for employees in tipped occupations.  (Doc. 8; see 29 U.S.C. § 203(m); 29 C.F.R. §

7    531.56.)  Furthermore, 29 C.F.R. § 531.56(e) (Dual Jobs) allows for tipped food service

8    personnel to perform related and incidental tasks to their main occupation without becoming

9    a dual job employee.  (Doc. 11.)  Because the controlling regulations are not ambiguous,

10   Denny's contends that the Court need not consider the DOL's informal commentary,

11   especially when such commentary does not interpret the regulation but purports to add

12   additional requirements.

13        The Court agrees with Denny's that the controlling regulations are not ambiguous;

14   therefore, the Court need not consider additional DOL informal commentary.  It is for the

15   Court to determine as a matter of law whether the applicable DOL regulations are

16   ambiguous.  See Christensen, 529 U.S. at 588 (finding that the regulation in that case was not

17   ambiguous); Saavedra v. Donavan, 700 F.2d 496, 500 (9th Cir. 1983) (stating that whether

18   an ambiguity exists is a question of law).

19         In addition, the Court need not further evaluate Richardson's DOL sub-regulation

20   argument because Richardson does not claim in Count 1 that she was working dual jobs. The

21   DOL sub-regulation is designated as providing informal commentary regarding 29 C.F.R. §

22   531.56(e) (Dual Jobs).  Absent Richardson alleging in Count 1 that she was working dual

23   jobs, the Court need not consider her arguments regarding whether any deference is due to

24   the DOL sub-regulation's commentary regarding § 531.56(e).  This result is further made

25   clear by Richardson's complaint, which raises a dual jobs claim in Count 2. Thus, Count 1

26   remains subject to dismissal.

27        In order to avoid dismissal of Count 2, Richardson alleges that she was engaged in

28   working dual jobs at Denny's yet only getting paid at the reduced tip credit rate when

1  performing the non-tipped occupation. (Doc. 1 at 6-7.)  According to Richardson, Denny's

2  requirement that she perform non-related server duties constitutes a different job

3  classification and that she was entitled to the federal minimum wage when she performed

4  those non-related duties, not the tip credit hourly wage used by Denny's. (Id. at 7-8.)

5       Richardson argues that the controlling regulation, § 531.56(e), is ambiguous and

6  therefore the Court should defer to DOL's interpretive commentary found in the sub-

7  regulation, § 30d00(e), citing Auer v. Robbins, 519 U.S. 452, 461-62 (1997) (discussing

8  deference in the context of an agency's interpretation of its own ambiguous regulation unless

9  the interpretation is plainly erroneous, inconsistent with the regulation, or does not reflect the

10  agency's fair and considered judgment on the matter in question).  Based upon the sub-

11  regulation's commentary, she performed unrelated non-tipped duties and therefore was owed

12  the federal minimum wage for the hours she worked dual occupations, not the tip credit wage

13  she was paid by Denny's.

14       Denny's counters that the Court need not consider informal DOL commentary for §

15  531.56(e) because § 531.56(e) itself is not ambiguous. (Doc. 11 at 2.)  Furthermore, the

16  informal commentary is not persuasive because it does not interpret the regulation but

17  purports to add additional requirements which is the province of Congress.  (Id. at 2-3.)

18  Continuing, Denny's contends that since only Congress is authorized to enact laws,

19  administrative executive agencies such as DOL violate the separation of powers principle

20  when they enact "laws" under the guise of providing informal commentary to a regulation.

21  (Id.)  Denny's contends that the sub-regulation is not entitled to deference because the

22  commentary was not arrived at by formal adjudication or notice and comment rulemaking.

23  (Id. at 3.) Denny's argues that giving deference to the sub-regulation leads "to the anomalous

24  result of allowing agencies to side-step the onerous rulemaking process by engaging in a

25  two-step process. First, they could publish unobjectionable, vague regulations. Then, they

26  could simply issue opinions in various forms that 'interpreted' the regulation in a manner that

27  may not have survived public notice and comment."  (Id.)  Thus, the sub-regulation usurps

28  the legislative function.

1    Under these facts, and as previously found, the Court agrees with Denny's that §

2  531.56(e) is not ambiguous.  The dual jobs regulatory framework identifies an employee

3  performing two or more entirely distinct, non-overlapping jobs. The facts in Richardson do

4  not present a situation contemplated in the regulation regarding "dual jobs" in which an

5  individual is assigned two identifiable, separate occupations.  Richardson was engaged in one

6  occupation, server.  Section 531.56(e) specifically allows a server to engage in incidental

7  related duties.  Thus, the server occupation inherently includes side work.  The regulation

8  does not identify this "duties" dichotomy or cap incidental duties at 20%.  Based on the

9  regulation, the Court need not identify the duties that Richardson performed in her server

10 occupation and then classify some as related tipped duties and some as non-related

11 non-tipped duties, and then implement a different occupational standard for the non-tipped

12 duties as compared with her tipped occupation server duties.

13   Moreover, even if the Court found § 531.56(e) ambiguous, the Ninth Circuit has

14 provided guidance regarding this Court's inquiry into the issue of any deference due to the

15 DOL sub-regulation.  In Probert v. Family Centered Services of Alaska, Inc., 651 F.3d 1007,

16 1012 (9th Cir. 2011), the Ninth Circuit, relying on the authority of Christensen, 529 U.S. at

17 587, remarked that "it does not appear to us that the [DOL Wage and Hour Field Operations

18 Handbook] is a proper source of interpretive guidance [because] [t]he handbook itself says

19 that it 'is not used as a device for establishing interpretative policy.' [DOL Wage and Hour

20 Field Operations Handbook] Foreword at 1, available at http:// www. dol. gov/ whd/ FOH/

21 index.htm ."  Rather it is meant only to provide guidance for employees of the Wage and

22 Hour Division charged with enforcing the FLSA.  See Barron v. Reich, 13 F.3d 1370, 1372

23 (9th Cir. 1994).  It is undisputed that DOL has never initiated an enforcement litigation

24 against a restaurant based upon the sub-regulation at issue.  (See Doc. 11 at 5.)

25   Continuing, the Court further finds that the sub-regulation is neither persuasive nor

26 entitled to deference for several reasons.  First, it is undisputed that the DOL's Wage and

27 Hour Division in its opinion letters regarding the dual jobs regulation has inconsistently

28 provided guidance, first taking one position, then reversing course, reversing course again,

then withdrawing the original position.  (See Doc. 8 at 7-8.)  In a 1980 opinion letter, the DOL first opined that duties performed by tipped employees after closing hours did not render them untipped employees. These services included cleaning the salad bar, placing condiment crocks in the cooler, cleaning the waitress station, stocking the waitress station, cleaning tables, filling salt and pepper shakers, and vacuuming the dining room.  See Dep't of Labor Opinion Ltr., Wage and Hour Div., 1980 WL 141336 (Mar. 28, 1980).  Next, in a 1985 opinion letter, the DOL opined that one out of five waiters who was required to report two hours early to perform set-up work, in which it was held that the salad preparation set-up work was a job traditionally performed by chefs, the DOL concluded that the waiter held "dual jobs" and was entitled to full minimum wage for that portion of his shift.  Dep't of Labor Opinion Ltr., Wage and Hour Div., 1985 DOLWH LEXIS 9 (Dec. 20, 1985).  Next, in a 2009 opinion letter, the DOL reversed course opining that "[w]e do not intend to place a limitation on the amount of duties related to a tip-producing occupation that may be performed, so long as they are performed contemporaneously with direct customer-service duties . . ."  The DOL concluded that an employer could take a tip credit for an employee in the occupation of "bar back," even though the bar back employee spent none of his time waiting on customers. The services performed by the bar back (bartender's assistant) included restocking the bar, cleaning the bar, organizing the bar, cleaning empty glasses, taking out the trash, and cleaning the floor. Because the employee was in an occupation where he received more than $30 a month in tips, he was a "tipped employee" and the employer could thus take a tip credit.  Dep't of Labor Opinion Ltr., Wage and Hour Div., 2009 WL 649014 (Jan. 15, 2009).  Subsequently, less than two month later, in connection with a change in the executive administration, the DOL withdrew the Jan. 15, 2009 letter. Dep't of Labor Opinion Ltr., Wage and Hour Div., 2009 DOLWH LEXIS 27 (Mar. 2, 2009).

By engaging in such an inconsistent approach in its opinions regarding the dual jobs regulation, § 531.56(e), the DOL's 1988 sub-regulation on the same issue is neither persuasive nor entitled to deference.  See Christopher v. SmithKline Beecham Corp., 132 S. Ct. 2156, 2166-67 (2012) (affording no deference to the DOL's interpretation of its own

1    regulations regarding the outside salesperson exemption because, among other things, the

2    DOL's position had shifted over time); see also Thomas Jefferson Univ. v. Shalala, 512 U.S.

3    504, 515 (1994) (stating that an agency's interpretation of a regulation that conflicts with a

4    prior interpretation is entitled to considerably less deference than a consistently held agency

5    view).

6         Next, the DOL sub-regulation does not interpret § 531.56(e) but arbitrarily adds

7    additional requirements to it, creating the rule that if incidental and related duties comprise

8    more than 20% of a server's duties, then no tip credit may be taken for the server's time spent

9    on such incidental or related duties.  The court in Pellon v. Bus. Representation Int'l, Inc.,

10   528 F. Supp. 2d 1306 (S.D. Fla. 2007), aff'd, 291 Fed. Appx. 310 (11th Cir. 2008), rejected

11   the sub-regulation's approach as unworkable and inappropriate.  The Court agrees with the

12   cogent findings made by the court in Pellon.  In Pellon, plaintiffs were skycaps at the Miami

13   International Airport who argued that their employer was not allowed to take a tip credit

14   because they were required to perform duties other than assisting travelers with their luggage.

15   The Pellon court found that the skycaps were in the tipped "occupation" of skycaps and that

16   any other duties they were required to perform were incidental to receiving tips. The court

17   found that skycaps were similar to servers.  Like servers, the skycaps' duties involved many

18   tasks that did not directly earn tips. The Pellon court found that the skycaps were not

19   performing dual occupations; rather they had one occupation in which they received more

20   than $30 a month in tips.  The court rejected the sub-regulation's 20% commentary, as

21   follows:

22         However, a determination whether 20% (or any other amount) of a skycap's
           time is spent on non-tipped duties is infeasible. . . Permitting Plaintiffs to
23         scrutinize every day minute by minute, attempt to differentiate what qualifies
           as tipped activity and what does not, and adjust their wage accordingly would
24         create an exception that would threaten to swallow every rule governing (and
           allowing) for tip credit for employers.

25   528 F. Supp.2d at 1313-14. The Eleventh Circuit affirmed "on the basis of the district court's

26   well-reasoned order."  See 291 Fed. Appx. 310 (11th Cir. 2008).  The Court agrees with

27   Pellon and will not give deference to a policy having the net effect of allowing a server to do

28

- 14 -

1   nothing during slow periods at a restaurant or require the restaurant to pay the server
2   additional sums to help out around the restaurant.  The law does not require that result. On
3   the basis of the foregoing, Count 2 will also be subject to dismissal.

4                                              **CONCLUSION**

5         In conclusion, to adopt the sub-regulation by giving it deference would require this
6   Court to set aside the constitutional principles of separation of powers, which the Court will
7   not do.  Justice Thomas summarized this concern in his concurrence in <u>Perez v. Mortgage</u>
8   <u>Bankers Assoc.</u>, Nos. 13-1041, 13-1052, 2015 WL 998535 *13 (U.S. March 9, 2015), where
9   he stated that giving deference to administrative interpretations of regulations requires judges
10  to give legal effect to the agency interpretations rather than to the regulations themselves.
11  "Because this doctrine effects a transfer of judicial power to an executive agency, it raises
12  constitutional concerns . . . [because it] undermines our obligation to provide a judicial check
13  on the other branches, and it subjects the regulated parties to precisely the abuses that the
14  Framers sought to prevent." <u>Id.</u>

15        The Court will dismiss Counts 1 and 2 of Richardson's complaint because they lack
16  both a cognizable legal theory and because they fail to allege sufficient facts to support a
17  cognizable legal claim.  <u>See</u> <u>SmileCare Dental Group</u>, 88 F.3d at 783.

18        Accordingly,

19        **IT IS HEREBY ORDERED** granting Denny's motion to dismiss Counts 1 and 2
20  with prejudice. (Doc. 8.)   Because the Court has found Richardson's claims are
21  constitutionally and statutorily meritless, and thus futile, the Court will not grant leave to
22  amend Counts 1 or 2.

23        **IT IS FURTHER ORDERED** denying Denny's motion to dismiss Richardson's
24  Complaint.  (Doc. 8.)  Count 3 of Richardson's Complaint remains.

25        **IT IS FURTHER ORDERED** that the Clerk of Court forward a copy of this Order
26  to all counsel of record in the other transferred cases but are not part of these motion to
27  dismiss proceedings, specifically to counsel in CV 14-51, CV 14-185, CV 14-259, CV 14-
28  260, CV 14-261, CV 14-262, CV 14-263, CV 14-264, CV 14-265, CV 14-351, CV 14-464,

1    CV 14-475, CV 14-517, CV 14-682, CV 14-766, CV 14-768, CV 14-769, CV 14-1038, CV

2    14-1243, CV 14-1244, CV 14-1370, CV 14-1467, CV 14-1761, and CV 14-2362.

3          DATED this 19th day of March, 2015.

4

5

6                                              Stephen M. McNamee
                                          Senior United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28